**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TONYA RENEE CLOWSER, | ) Case No. EDCV 16-2044-JPR |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM DECISION AND ORDER** |
| | ) **REVERSING COMMISSIONER** |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed July 11, 2017, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this action is remanded

---

[1] Nancy A. Berryhill is substituted in as the correct Defendant.

for further proceedings.

**II.  BACKGROUND**

Plaintiff was born in 1976.  (Administrative Record ("AR") 186.)  She has a GED (AR 218) and last worked as a licensed vocational nurse (id.; see also AR 57-58).

On January 22, 2013, Plaintiff filed an application for DIB, alleging that she had been disabled since December 21, 2011 (AR 186), because of "disc herniation facet joint hypertrophy bursitis nerve," "back injury multiple disc desiccation with annular tear," spinal retrolisthesis,[2] bursitis of the hips, pain and numbness in her right leg, anxiety, depression, insomnia, colitis, irritable bowel syndrome, and fibromyalgia (see AR 217, 230).  After her application was denied initially (AR 110) and upon reconsideration (AR 116), she requested a hearing before an Administrative Law Judge (see AR 131).  A hearing was held on December 30, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 53-81.)  In a written decision issued March 20, 2015, the ALJ found Plaintiff not disabled.  (AR 33-47.)  Plaintiff requested review from the Appeals Council, and on August 1, 2016, it denied review.  (AR 1-6.)  This action followed.

**III.  STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and

---

[2] Retrolisthesis is a joint dysfunction in which a single vertebra slips backward along or underneath a disc.  See Retrolisthesis: Types, Causes, and Symptoms, MedicalNewsToday, https://www.medicalnewstoday.com/articles/319571.php (last updated Sept. 30, 2017).

decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R.

§ 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied.  § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed.  § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform her past work; if so, she is not disabled and the claim must be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  The Commissioner assesses the claimant's RFC between steps three and four.  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

proving she is unable to perform past relevant work.  <u>Drouin</u>, 966

F.2d at 1257.  If the claimant meets that burden, a prima facie

case of disability is established.  <u>Id.</u>

If that happens or if the claimant has no past relevant

work, the Commissioner then bears the burden of establishing that

the claimant is not disabled because she can perform other

substantial gainful work available in the national economy.

§ 404.1520(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257.  That

determination comprises the fifth and final step in the

sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828

n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.    <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 21, 2011, the alleged

disability onset date.  (AR 35.)  At step two, he concluded that

she had the following severe impairments: "degenerative disc

disease of the lumbar spine with mild radiculopathy; bilateral

bursitis of the hips, left more than right; and pain disorder,

likely due to fibromyalgia."[4]  (<u>Id.</u>)  At step three, he found

that she did not have an impairment or combination of impairments

falling under a Listing.  (AR 38-39.)

At step four, the ALJ found that Plaintiff had the RFC to

perform a modified version of sedentary work: she can "lift,

carry, push, and pull ten pounds occasionally and less than five

pounds frequently," "sit for six hours out of an eight-hour day,

for a maximum of forty minutes at a time," "stand and walk for

---

[4] Plaintiff does not challenge the ALJ's finding that her
other alleged impairments were not severe.

six hours of an eight-hour day, for a maximum of 10-15 minutes at a time," and "perform occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." (AR 39.) She also "can never climb ladders, ropes, or scaffolds," "must avoid extreme cold," and "must avoid hazardous machinery and unprotected heights." (Id.)

Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform any past relevant work. (AR 45.) At step five, however, given her "age, education, work experience, and [RFC]," he determined that she could successfully perform two jobs in the national economy: booth ticket seller, DOT 211.467-030, 1991 WL 671853, and bench hand, DOT 715.684-026, 1991 WL 679344. (AR 46.) Thus, the ALJ found Plaintiff not disabled. (AR 46-47.)

## V. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating (1) the medical-opinion evidence of record, specifically regarding the length of time Plaintiff could stand and walk, (2) the medical opinion from an "other source," and (3) the credibility of Plaintiff's "pain and symptom testimony." (See J. Stip. at 4-5.) Because the ALJ erred as to the medical-opinion evidence and part of the other-source opinion, the matter must be remanded for further proceedings.

### A. The ALJ Improperly Evaluated the Medical-Opinion Evidence

The ALJ gave only "partial weight" to the opinions of nonexamining state-agency internists G. Taylor-Holmes and M. Yee and examining internist Robin Alleyne because they were "overly

6

optimistic" and the "record support[ed] further limitations."[5]
(AR 43-45.) Those doctors specifically opined that Plaintiff
could "stand and walk for four hours in an eight-hour workday"
(J. Stip. at 6 (citing AR 88-90, 101-03, 501-04)), but the ALJ
rejected that finding "without an explanation," Plaintiff
alleges, when he determined an RFC in which she could "stand and
walk for six hours in an eight-hour day, for a maximum of 10-15
minutes at a time" (<u>id.</u> at 6 (citing AR 39), 7).

       1.  <u>Applicable law</u>

Three types of physicians may offer opinions in Social
Security cases: those who directly treated the plaintiff, those
who examined but did not treat the plaintiff, and those who did
neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion
is generally entitled to more weight than an examining
physician's, and an examining physician's opinion is generally
entitled to more weight than a nonexamining physician's. <u>Id.</u>;
<u>see</u> § 404.1527(c)(1).[6] This is so because treating physicians

---

[5] As noted by both parties (<u>see</u> J. Stip. at 5 n.3, 11 n.6),
the ALJ mistakenly refers to Dr. Alleyne as "Dr. Resnick"
(<u>compare</u> AR 44 (stating that "Dr. Resnick" conducted consultative
examination in July 2013), <u>with</u> AR 500-05 (Dr. Alleyne in fact
conducted July 2013 consultative examination while radiologist
Lawrence Resnick provided radiological assessment of Plaintiff's
lumbar spine)).

[6] Social Security regulations regarding the evaluation of
opinion evidence were amended effective March 27, 2017. When, as
here, the ALJ's decision is the final decision of the
Commissioner, the reviewing court generally applies the law in
effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>,
474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of
regulation in effect at time of ALJ's decision despite subsequent
amendment); <u>Garrett ex rel. Moore v. Barnhart</u>, 366 F.3d 643, 647
(8th Cir. 2004) ("We apply the rules that were in effect at the
time the Commissioner's decision became final."); <u>Spencer v.</u>

are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). But "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended).

The ALJ may disregard a treating or examining physician's opinion regardless of whether it is contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989); <u>see</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). When a treating or examining physician's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for "clear and convincing" reasons. <u>Magallanes</u>, 881 F.2d at 751; <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31). The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. § 404.1527(c)(3)-(6). Those factors also determine the weight afforded the opinions of nonexamining physicians. § 404.1527(e).

---

<u>Colvin</u>, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking."). Accordingly, citations to 20 C.F.R. § 404.1527 are to the version in effect from August 24, 2012, to March 26, 2017.

The ALJ considers findings by state-agency medical consultants and experts as opinion evidence.  Id.

Furthermore, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ need not recite "magic words" to reject a physician's opinion or a portion of it; the court may draw "specific and legitimate inferences" from the ALJ's opinion. Magallanes, 881 F.2d at 755. "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

2.  Relevant background

On February 22, 2011, Plaintiff, a licensed vocational nurse, injured her lower back at work.  (AR 279-81.)  She "self-treated with analgesic medication she had at home" but did not seek medical care and continued to work.  (AR 280.)  Her pain, however, worsened, and in November 2011 an MRI scan revealed "degeneration and disc bulging."  (AR 280-81; see also AR 297-300.)  Surgery was not required, but Plaintiff stopped working on

December 20, 2011, at the request of her doctor.

In July 2013, Plaintiff received an internal-medicine consultation from Dr. Alleyne of the Department of Social Services. (AR 500-04.) Dr. Alleyne observed that Plaintiff had a "slightly antalgic gait" and had difficulty walking on her heels but could walk on tiptoes without difficulty. (AR 501.) There was "some lower lumbar tenderness" in Plaintiff's back but "no evidence of muscle spasm." (AR 502.) Back flexion at the waist was "limited to 40 degrees," she was "only able to crouch to 50%," and bilateral positive straight-leg raises were limited to 40 degrees. (Id.) But the ranges of motion in her hips, knees, and ankles were all within normal limits. (Id.) She noted that Plaintiff was taking various prescription medications. (AR 500.) Based on her findings, Dr. Alleyne concluded that Plaintiff had "mild to moderate limitations." (AR 503.) She could "walk and stand four hours out of an eight-hour day" and "crouch, climb and crawl occasionally," among other things. (Id.)

Plaintiff's medical records were reviewed in 2013 by Drs. Taylor-Holmes and Yee, who found her not disabled. (AR 82-93, 94-107.) In August, Dr. Taylor-Holmes found that Plaintiff could stand and walk for four hours a day "with normal breaks" and occasionally climb stairs, crouch, and crawl. (AR 88-89.) In November, Dr. Yee assessed no change since Dr. Taylor-Holmes's evaluation (AR 99-100) and found those same exertional limitations. (See AR 102-03.)

### 3. Analysis

The opinions on standing and walking of Drs. Taylor-Holmes, Yee, and Alleyne were not contradicted by other medical-opinion evidence in the record, and the ALJ was therefore required to provide clear and convincing reasons for discounting them. See Magallanes, 881 F.2d at 751; Carmickle, 533 F.3d at 1164.[7]  But he provided no such reason for rejecting the four-hour standing-and-walking limitations found by those doctors in favor of the six-hour limitation he included in the RFC. Indeed, nothing in the record supports a six-hour standing-and-walking limitation. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding that ALJ erred in rejecting treating physician's opinion in part because "[t]here [was] no medical evidence to support the ALJ's finding that [plaintiff] could work through an eight hour workday with breaks every two hours").

The ALJ did note that Plaintiff's "standing[] and walking abilities" as found by Drs. Taylor-Holmes, Yee, and Alleyne were undermined by medical findings suggesting "more restrictive" limitations (AR 43-44) and by "claimant's allegations concerning

---

[7] Though the ALJ found that the opinions of Dr. Taylor-Holmes and Dr. Yee stood "in contrast" to the opinion of chiropractors Christine Abgaryan and Anna Gasparian (AR 44), who determined that Plaintiff should not stand for longer than an hour at a time (AR 357), a chiropractor's contradictory opinion does not constitute medical-opinion evidence. See § 404.1513(d)(1); Bara v. Colvin, No. C15-5214 RAJ, 2016 WL 4444030, at *2 (W.D. Wash. Jan. 4, 2016) ("[Plaintiff] fails to point to a specific medical record or medical opinion (as opposed to other source opinion) that contradicts [the treating physician's] opinion," warranting clear-and-convincing-reasons standard (citing Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991)).

the maximum amount of time she can . . . stand[] and walk" (AR
44-45). The ALJ noted that "findings of right leg hypesthesia,
right leg sensory deficits, tenderness to the palpation of the
inguinal area of the hip,[8] and marked tenderness to palpation of
the great trochanteric area of the hip" supported "more
restrictive limitations in [Plaintiff]'s sitting, standing, and
walking abilities" than Drs. Taylor-Holmes and Yee had opined.
(AR 43-44 (citing AR 269, 285-86).) The ALJ offered similar
reasons for discounting the opinion of Dr. Alleyne, stating that
"findings of tenderness to palpation in [Plaintiff's] lumbar
spine and right hip, decreased sensation in her right leg, and
limited range of motion in her lumbar spine and right hip
support[ed] further limitations than [what was] opined." (AR 44
(citing AR 269, 285-86, 380-81, 532, 543).) As a result, the ALJ
added a limitation to Plaintiff's RFC that she stand or walk for
no more than 10 to 15 minutes at a time.

The ALJ pointed to the findings of a treating orthopedic
surgeon who diagnosed Plaintiff with degenerative disc disease
and bilateral trochanteric bursitis in 2012. (See AR 43-44
(citing AR 269, 285-86), 288.) His opinion was corroborated by a
physical examination he conducted at the time (see, e.g., AR 285
(Plaintiff demonstrating limited flexion and extension in her
back and tenderness in areas of her lower back and hips)) and
medical images of Plaintiff's spine (see, e.g., AR 286 (x-ray

---

[8] The ALJ stated that Plaintiff was found to have
"tenderness to palpation of the inguinal area of the hip." (AR
44 (citing AR 269).) But at AR 269 Plaintiff was noted as having
"no inguinal tenderness."

12

images showing narrowing of L3-4 and L4-5 intervertebral space), 287 (MRI images showing disc desiccation, disc protrusion, and bilateral facet joint hypertrophy, among other things)). His findings were supported by other medical records from 2012. (See, e.g., AR 268-70 (Plaintiff's pain did not change following April 2012 extracorporeal-shockwave-therapy treatment), 478-79 (in April 2012 Plaintiff demonstrated limited range of motion in her back, low-back pain, muscle spasms, and swelling), 389-93 (May 2012 MRI imaging of her thoracic spine showing restricted range of motion in extension position, disc desiccation, diffuse disc protrusion, and bilateral facet joint hypertrophy).)

None of the cited records, however, suggest that Plaintiff could stand or walk for six hours in an eight-hour workday. The ALJ did not identify any such medical finding, nor did he articulate why a six-hour standing-and-walking limitation, even for "10-15 minutes at a time," is "more restrictive" than a four-hour standing-and-walking limitation with "normal breaks." See Kline v. Colvin, 140 F. Supp. 3d 912, 918 (D. Ariz. 2015) (as amended Jan. 12, 2016) (finding that ALJ erred under "clear and convincing" standard because "she did not explain which aspects of [treating physician's] opinion were contradicted or by whom"). Defendant argues that "common sense dictates that the ALJ's RFC assessment is, in fact, more restrictive than the doctors' opinion" because of the ALJ's added limitation of standing for no more than 10 to 15 minutes at a time (J. Stip. at 13), but no matter how you do the math, six hours is more than four. Further, the ALJ never stated that he was increasing the total amount of time Plaintiff could stand or walk because he had

13

limited the length of time she could do either without a break. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (district court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

Thus, the ALJ erred in evaluating the medical-opinion evidence as to Plaintiff's standing and walking abilities, which was uncontradicted in concluding that Plaintiff could stand and walk no more than four hours in an eight-hour day. See Reddick, 157 F.3d at 725 (ALJ must explain why his conclusions, rather than doctors', are correct); Burden v. Berryhill, No. 2:17-cv-00222-RBL, 2017 WL 4417225, at *2 (W.D. Wash. Oct. 5, 2017) ("[T]he ALJ erred by tacitly rejecting part of [a nonexamining physician's] opinion without explanation."); see also Soholt v. Astrue, No. 10-cv-5937-RBL-JRC, 2011 WL 5909992, at *5 (W.D. Wash. Oct. 31, 2011) (finding that ALJ erred in part because he "did not explain why he did not adopt the aforementioned opinions of [an examining physician] regarding plaintiff's functional ability to sit, stand or walk without breaks every thirty minutes"), accepted by 2011 WL 5909998 (W.D. Wash. Nov. 28, 2011).

Accordingly, because the ALJ failed to provide a clear and convincing reason for rejecting the standing-and-walking opinions of Drs. Taylor-Holmes, Yee, and Alleyne, remand is warranted.[9]

---

[9] Defendant has not argued that any error was harmless (see generally J. Stip. at 11-15), so the Court does not examine whether that is so. See Press v. Astrue, No. CV. 08-1089-AC,

B. **The ALJ Likely Improperly Evaluated the Other-Source Opinion**

Plaintiff "mainly takes issue with the ALJ's rejection of the lifting and carrying restrictions assessed by Dr[s]. Abgaryan and Gasparian," chiropractors who examined her in 2012. (J. Stip. at 17.) She argues that the ALJ did not properly evaluate and reject that portion of their opinion. (Id. at 17, 19.) She also complains that the ALJ improperly evaluated their opinion regarding her ability to crouch. (Id. at 16.)

1. Applicable law

"Acceptable medical sources" under the Social Security regulations include only licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists. § 404.1513(a).[10] Chiropractors are treated as "other sources," see § 404.1513(d)(1), and an ALJ may reject opinions from other sources by giving "reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (citation omitted); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (reasons for rejecting other-source testimony must be "germane" and "specific").

---

2010 WL 3222103, at *9 n.6 (D. Or. Aug. 13, 2010) (because "Commissioner did not argue that the ALJ's failure was harmless error," "the Commissioner has given the court no basis upon which to evaluate whether the error was harmless and the court declines to seek one out").

[10] Social Security regulations regarding the categories of acceptable medical evidence were amended effective March 27, 2017. See § 404.1513. Again, the Court applies the law in effect at the time of the ALJ's decision.

## 2. Additional relevant background

Chiropractors Abgaryan and Gasparian conducted a functional-capacity evaluation for Plaintiff on June 12, 2012. (See AR 355-72.) They administered several tests and questionnaires measuring both the reliability of Plaintiff's subjective-pain complaints and the extent of her functional limitations in various areas, including strength, range of motion, mobility, and dexterity. (See id.) They had Plaintiff complete, for example, a "dynamic lift" test, in which she demonstrated that she could carry 8.5 pounds for 30 feet but 11 pounds at most. (AR 368.) She also demonstrated the ability to lift 8.5 pounds from "floor to knuckle," six pounds from "knuckle to shoulder," and less than six pounds from "shoulder to overhead." (Id.) At most she could lift 11 pounds from floor to knuckle, 8.5 pounds from knuckle to shoulder, and six pounds overhead. (Id.)

They concluded that Plaintiff should not sit for longer than 60 minutes at a time; should not stand for longer than 60 minutes at a time; could not carry greater than "8.5 pounds over a length of 30 feet maximum"; could not lift more than 8.5 pounds, and for less than 30 percent of the day; and should "[a]void bending," "crouching," and "twisting." (AR 357.) They also found her subjective reports of pain and disability "moderately reliable" and concluded that she "displayed moderate physical effort" during the evaluation. (AR 356.)

## 3. Analysis

The ALJ gave "partial weight" to the opinion of chiropractors Abgaryan and Gasparian. (AR 44.) He acknowledged that "their findings from their examination support their

opinion," but he concluded that his RFC was "a more accurate depiction of [Plaintiff's] functional abilities." (Id.)

Plaintiff argues that the ALJ incorrectly discounted the chiropractors' opinion that she "could never crouch." (See J. Stip. at 16 (citing AR 44).) She contends that her demonstrated ability "to crouch to 50%," as found by Dr. Alleyne (see AR 502), indicated that she was unable to crouch "to the full range of 100 percent," which she seems to suggest is consistent with the Abgaryan and Gasparian opinion (J. Stip. at 16). But the ALJ did not err in this regard. Because Drs. Abgaryan and Gasparian are chiropractors, they are considered "other" sources, see § 404.1513(d)(1), and the ALJ properly offered a germane reason — contradiction with medical evidence (AR 44) — for discounting their crouching opinion, see Molina, 674 F.3d at 1111.

An ALJ may properly discount an other-source opinion when it conflicts with medical evidence. Id. at 1112. Though the Ninth Circuit has held that "lack of support from medical records is not a germane reason," see Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017); accord Bruce, 557 F.3d at 1116; Smolen, 80 F.3d at 1289 (citing SSR 88-13, 1988 WL 236011 (July 20, 1988)), those cases are distinguishable. Each involved an ALJ's rejection of a family member's laywitness observations. See Diedrich, 874 F.3d at 640 (plaintiff's fiancé); Bruce, 557 F.3d at 1116 (plaintiff's wife); Smolen, 80 F.3d at 1289 (various family members). But see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that inconsistency with medical evidence is germane reason for discrediting testimony of family members); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)

17

(same); <u>Vincent ex rel. Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (same).

Here, by contrast, the ALJ rejected the opinion of a medical "other source," namely, two chiropractors. <u>See</u> § 404.1513(d) (distinguishing between other "[m]edical sources," such as chiropractors and physicians' assistants, and other "non-medical sources," such as spouses and family members). Contradiction with medical evidence is germane to discounting the opinion of medical "other sources." <u>See</u> <u>Molina</u>, 674 F.3d at 1111-12 (ALJ properly discounted opinion of physician's assistant because it was inconsistent with medical evidence); <u>Minton v. Astrue</u>, CV 11-00461-PHX-FJM, 2012 WL 1019591, at *4 (D. Ariz. Mar. 26, 2012) ("One example of a germane reason to discount the opinion of an 'other' medical source is when that opinion conflicts with medical evidence.").

The Social Security Administration defines "crouching" as "bending both the legs and spine in order to bend the body downward and forward." <u>See</u> SSR 83-10, 1983 WL 31251 (Jan. 1, 1983); <u>see also</u> <u>Filimoshyna v. Astrue</u>, No. CIV S-08-2131 GGH, 2009 WL 3627946, at *8 (E.D. Cal. Oct. 29, 2009). The ALJ properly determined that Drs. Abgaryan and Gasparian's opinion that Plaintiff "should never crouch" was contradicted by medical evidence demonstrating that she could crouch, albeit only to 50 percent. (AR 44.) Nothing in the regulations or case law appears to require that "crouching" be to a certain depth.

The ALJ cited and relied on AR 502 (<u>see</u> AR 44), Dr. Alleyne's opinion that Plaintiff was "able to crouch to 50%" and could crouch "occasionally" (AR 502-03). That finding was

supported by a thorough physical examination conducted at the time (see AR 501-02) and by medical opinions in the record also stating that Plaintiff could crouch (see AR 89, 103). Thus, contradiction with Dr. Alleyne's opinion, which itself was supported by substantial evidence, was a sufficiently germane reason to reject the crouching opinion of Drs. Abgaryan and Gasparian. See Mendoza v. Colvin, No. 1:13-cv-01213-SKO, 2015 WL 1320093, at *22 (E.D. Cal. Mar. 24, 2015) (finding that ALJ properly rejected nurse's other-source opinion because it was directly contradicted by consultative examiner's opinion, which was "an acceptable medical source entitled to more weight").

But the ALJ's stated reason for rejecting the chiropractors' more restrictive opinion concerning Plaintiff's "lifting and carrying restrictions" — "spinal tenderness" (AR 44) — does not appear to be germane. The ALJ did not explain why "spinal tenderness" would enable Plaintiff to lift more than the chiropractors found. He may do so on remand.

C. Plaintiff's Subjective Symptom Statements

Plaintiff asserts that the ALJ erred in assessing the credibility of her subjective symptom statements. (J. Stip. at 19-23, 26.) The ALJ may have to reevaluate Plaintiff's statements' credibility after he reassesses the opinions of Drs. Taylor-Holmes, Yee, and Alleyne and chiropractors Abgaryan and Gasparian, so the Court does not address this argument. See Negrette v. Astrue, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and laywitness

testimony).

D.   <u>Remand for Further Proceedings Is Appropriate</u>

Plaintiff requests that the Court reverse the ALJ's decision and "order the payment of benefits in this case." (J. Stip. at 26-27.) But when, as here, an ALJ errs, the Court "ordinarily must remand to the agency for further proceedings." <u>Leon v. Berryhill</u>, 874 F.3d 1130, 1132 (9th Cir. 2017); <u>see also</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended); <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). The Court has discretion to make a direct award of benefits under the "credit-as-true" rule, which asks (1) "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence,'" (2) "whether there are 'outstanding issues that must be resolved before a disability determination can be made,'" and (3) "whether further administrative proceedings would be useful." <u>See</u> <u>Leon</u>, 874 F.3d at 1132-33 (citations omitted). When the first two conditions are satisfied, the discredited testimony is credited as true, but even then, at step three, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." <u>Id.</u> at 1133 (explaining that "a direct award of benefits was intended as a rare and prophylactic exception to the ordinary remand rule"); <u>see also</u> <u>Harman</u>, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to reassess the opinions of

20

Drs. Taylor-Holmes, Yee, and Alleyne and chiropractors Abgaryan and Gasparian. If he again rejects the doctors' opinions as to Plaintiff's standing-and-walking limitations, he can then provide a clear and convincing reason for that finding. He may also clarify his rejection of chiropractors Abgaryan and Gasparian's lifting-and-carrying opinion, reassess his evaluation of the credibility of Plaintiff's symptom statements, and reevaluate Plaintiff's RFC in light of the evidence he did not previously consider or did not adequately explain his consideration of. Thus, remand is appropriate. See <u>Garrison</u>, 759 F.3d at 1020 n.26.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision.


DATED: November 30, 2017          _____
                                  JEAN ROSENBLUTH
                                  U.S. Magistrate Judge

_____

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."